THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
PEGGY L. VEASEY, Defendant-Appellant.

Second District   No. 2—91—0332

Opinion filed November 2, 1993.

G. Joseph Weller and Ingrid L. Moller, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Brian L. Buzard and Mark K. Vincent, both of Mt. Morris (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:
Defendant, Peggy L. Veasey, was convicted of forgery (Ill. Rev. Stat. 1985, ch. 38, par. 17—3(a)(1) (now 720 ILCS 5/17—3(a)(1) (West 1992))) and theft over $300 by deception (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(b)(1) (now codified, as amended, at 720 ILCS 5/16—1(a)(2)(A) (West 1992))) following a jury trial in the circuit court of Du Page County. Defendant filed a timely appeal from her theft con-

viction questioning whether there was sufficient evidence to prove, beyond a reasonable doubt, that she had an intent to permanently deprive the owner of possession of the subject property. Defendant also argues that victims assistance fines were improperly imposed against her by the circuit clerk.

The relevant facts are briefly summarized as follows. On June 12, 1986, Terrance M. Brady, then president of Market Lease, Inc. (Market Lease), received a telephone call from a person purporting to be Dolores Winfield. The caller was interested in a 48-month lease for a Chevy Cavalier. Brady eventually took various credit information from the caller including the caller's name, address, date of birth, driver's license number, social security number, and several credit card numbers. Brady compiled a credit application with this information which he telefaxed to GMAC Corp. (GMAC) for approval. Brady testified that credit information is traced through an individual's social security number. The caller's credit application was ultimately approved by GMAC.

Brady testified that on June 17, 1986, defendant and an unidentified male came into his offices. Defendant identified herself as Dolores Winfield and stated that she was there to pick up her vehicle. Brady testified that he explained the lease agreement and all its terms and conditions to defendant; they went outside and looked at the vehicle; they then finalized the lease agreement, license application, and insurance validation form; they signed the contract; and Brady gave defendant the vehicle's keys and owners manual. Brady stated that defendant signed both the lease agreement and insurance validation form, and she drove the vehicle away after the transaction was completed. The forms were signed "Delores R. Winfield." The lease agreement indicated that the first month's payment ($231.56), a refundable security deposit ($250), and various fees (totaling $50) were due upon signing of the lease. No testimony was presented concerning whether these sums were paid on June 17, or, assuming they were, who paid them or the manner in which they were paid.

Dolores Bell Winfield identified the social security number and two of the credit card numbers appearing on the credit application as her own. Winfield testified that she has never had contact with Market Lease, and she denied ever entering into any lease agreement for a Chevy motor vehicle on or about June 17, 1986. In fact, Winfield testified that she does not drive a car. Winfield stated that she gave no one permission to use her name, social security number, or credit rating. Winfield examined the signature appearing on the lease agreement and stated that it was not her signature.

James Boerema, an officer with the Homewood police department, testified that he executed a traffic stop of the subject vehicle at approximately 8:50 p.m. on June 19, 1986. The vehicle was being driven by a male subject with defendant as a passenger. The jury found defendant guilty of both forgery and theft of over $300 by deception.

Defendant argues on appeal that the evidence introduced at trial failed to show that she did not intend to fully comply with the terms of the lease agreement, including relinquishing possession of the vehicle at the end of the 48-month period, and, therefore, the State failed to prove that she had the requisite intent to permanently deprive the owner of the motor vehicle's use or benefit. The State responds that an intent to permanently deprive may be inferred from the circumstances surrounding defendant's actions. In particular, defendant represented herself to be another person to induce Market Lease to execute a lease for the subject vehicle in reliance on false credit information.

It is well established that the standard for reviewing the sufficiency of evidence supporting a criminal conviction is whether, after considering all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. (*People v. Smith* (1992), 149 Ill. 2d 558, 565; *People v. Hendricks* (1990), 137 Ill. 2d 31, 62; *People v. Grengler* (1993), 247 Ill. App. 3d 1006, 1011-12.) This standard is applicable in criminal cases regardless of whether the evidence is direct or circumstantial. (*People v. Campbell* (1992), 146 Ill. 2d 363, 374; *People v. Kaminski* (1993), 246 Ill. App. 3d 77, 82.) A reviewing court must consider that the jury heard and saw the witnesses and was, therefore, in the best position to assess their credibility, determine the weight to be accorded their testimony, decide what inferences to draw from the evidence, and resolve any actual disputes arising from conflicting or inconsistent testimony. (*Hendricks*, 137 Ill. 2d at 65; *People v. Reid* (1990), 136 Ill. 2d 27, 61; *Grengler*, 247 Ill. App. 3d at 1012.) A reviewing court must not substitute its judgment for that of the trier of fact on those issues unless the evidence presented at trial is so unreasonable, improbable, or unsatisfactory that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Reid*, 136 Ill. 2d at 61; *Grengler*, 247 Ill. App. 3d at 1012.

A defendant's intent to permanently deprive the owner of property may be deduced by the trier of fact from the facts and circumstances surrounding the alleged criminal act. (*People v. Falkner*

(1978), 61 Ill. App. 3d 84, 87; *People v. McClinton* (1972), 4 Ill. App. 3d 253, 256.) "With respect to many criminal acts, the act clearly 'speaks for itself.' The act so clearly broadcasts the intent with which it was performed that the question of intent either becomes inconsequential or the proof of it is so directly related to proof of the act that the evidence is regarded as direct even though technically it might be 'circumstantial.' " (*People v. Reans* (1974), 20 Ill. App. 3d 1005, 1009.) For example, it has been generally recognized that an intent to permanently deprive the owner of his property may ordinarily be inferred when a person takes the property of another. (*Falkner*, 61 Ill. App. 3d at 90; *People v. Steinmann* (1978), 57 Ill. App. 3d 887, 892.) This is particularly true when the owner of the property is a stranger to the accused. (See *People v. Jones* (1992), 149 Ill. 2d 288, 298, quoting *People v. Beck* (1976), 42 Ill. App. 3d 923, 924 (" 'It would be contrary to experience and reason to conclude a stranger would *** take money from another stranger without fully intending to permanently deprive the wronged party of the money' ").) Concealment of property has also been recognized as a circumstance supporting an inference of an intent to permanently deprive. (See *McClinton*, 4 Ill. App. 3d at 256.) Fraudulent or deceptive acts can also give rise to an inference of such intent. See *People v. Varellas* (1985), 138 Ill. App. 3d 820, 826-27 (uttering or offering of a forged instrument in conjunction with use of fictitious driver's license provided strong evidence supporting finding of requisite intent for charges of forgery and theft by deception); *Reans*, 20 Ill. App. 3d at 1008 (knowingly tendering check without funds on deposit would, in and of itself, support inference of existence of felonious intent).

In *People v. Jones* (1972), 4 Ill. App. 3d 927, defendant wrote a bank counter check for $10 in a friend's name. The friend had a savings account, but no checking account, at the subject bank. Defendant signed both her name and that of her friend to the check, and she also wrote her address and driver's license number on the check. The appellate court again determined that the record supported defendant's conviction of theft by deception. *Jones*, 4 Ill. App. 3d at 928.

Also, in *People v. Neary* (1969), 109 Ill. App. 2d 302 (abstract of opinion), the appellate court held that there was sufficient evidence to support defendant's conviction of the charge of theft by deception where a store manager had received a telephone order for rental of a fur, and, two days later, defendant, acting under another name and by means of a false driver's license and social security card, succeeded in obtaining such fur on the pretext he was acting on behalf of the per-

son who purportedly made the telephone call. *Neary*, 109 Ill. App. 2d at 302-03.

■■ Defendant concedes that the State established that she obtained control over the subject vehicle through deception. It is clear and undisputed that defendant drove away with the subject vehicle after having perpetrated an intentional fraud upon Market Lease. Also, when defendant concealed her true identity and credit history by providing a false name and credit information, she effectively concealed the vehicle from the owner. Defendant's argument that she might have made regular payments under the lease agreement and might have returned the car at the end of its term ignores the fact that, in light of her fraud in obtaining the lease, the agreement was voidable, and defendant may not be heard to assert that she acquired any rights under the agreement. It is also noted that defendant was in violation of the lease agreement's terms from its inception. Paragraph 2 of the lease agreement required the lessor to maintain insurance on the subject vehicle; however, defendant obtained and executed an insurance validation form under the same false pretenses as the lease agreement, including the forgery of Dolores Winfield's signature. Although one might infer, as defendant urges, that this is merely a case of fraudulent leasing, it was also reasonable to infer that this was a case involving an outright, though cleverly perpetrated, theft.

In obtaining the subject vehicle by fraud, defendant stands in the same position as one who obtains property in exchange for a forged instrument or other deception. We see no reason to distinguish her case merely because the fraud involved the leasing of property rather than its purchase under a credit agreement. Such a distinction would operate to reward defendant for her decision to choose this particular device for her deception. Defendant's conduct, as demonstrated by the facts and circumstances of this case, provided a sufficient basis from which the jury might reasonably infer the requisite felonious intent. The issue, therefore, was properly left for the jury to determine based upon the evidence presented. The fact that a deposit may have been made at the time of delivery of the vehicle, as the lease terms imply, does not prevent a finding of felonious intent. The amount deposited was less than one-twentieth of both the total value of the lease and the cost of the vehicle, as indicated in the lease agreement and credit application. Rather, it was a fact for the jury to weigh together with the other evidence presented. Schemes of fraud and deception frequently involve token acts toward performance of the agreement, but such acts will not always preclude a finding that there was an intent to permanently deprive. (See *People v. Riner* (1992),

234 Ill. App. 3d 733, 737.) We cannot say that the evidence presented was so unreasonable, improbable, or unsatisfactory that the jury could not find the requisite intent.

Concerning defendant's assertion that victims assistance fines were improperly imposed against her by the circuit clerk rather than the trial court, the State has confessed error and requested that the case be remanded to the trial court with directions that the appropriate mandatory fine be imposed. (See Ill. Rev. Stat. 1985, ch. 70, par. 510 (now codified, as amended, at 725 ILCS 240/10 (West 1992)).) We agree, pursuant to our decision in *People v. Turner* (1993), 249 Ill. App. 3d 474, 483, that the fines were improperly imposed, and we vacate that portion of defendant's sentences involving the victims assistance fines and remand to the trial court for imposition of the appropriate mandatory fines.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed, and the cause is remanded.

Affirmed in part and remanded in part with directions.

INGLIS, P.J., and COLWELL, J., concur.