2015 IL App (4th) 130265
NO. 4-13-0265

**FILED**
March 18, 2015
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| CORTEZ D. MURPHY, | ) | No. 12CF1150 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas E. Griffith, Jr., |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court, with opinion.
Justice Knecht concurred in the judgment and opinion.
Justice Steigmann dissented, with opinion.

**OPINION**

¶ 1        In January 2013, a jury found defendant, Cortez D. Murphy, guilty of two counts

of burglary. In March 2013, the trial court sentenced defendant to six years in prison.

¶ 2        On appeal, defendant argues (1) the State failed to prove him guilty beyond a

reasonable doubt, (2) the jury instructions denied him a fair trial, and (3) he was denied the

effective assistance of counsel. We vacate defendant's burglary convictions.

¶ 3                          I. BACKGROUND

¶ 4        In August 2012, the State charged defendant by information with two counts of

residential burglary (720 ILCS 5/19-3 (West 2010)), alleging defendant knowingly and without

authority entered into the dwelling places of Lyndsi Constant (count I) and Ashley Benton (count

II) with the intent to commit therein a theft.

¶ 5         In January 2013, the State filed an amended information, charging defendant with two counts of burglary (720 ILCS 5/19-1(a) (West 2010)).  In count III, the State alleged defendant committed the offense of burglary when he knowingly entered the building of Pawn King with the intent to commit therein a theft.  In count IV, the State alleged he committed the offense of burglary when he knowingly entered the building of Pawn King a second time with the intent to commit therein a theft.

¶ 6         In January 2013, defendant's jury trial commenced.  The State dismissed counts I and II and proceeded on the two burglary counts.  Lyndsi Constant testified she arrived home on the night of June 14, 2012, to find her house had been ransacked and several items were missing, including an Xbox game console and controllers.  Ashley Benton testified she returned home on the night of June 14, 2012, and found her house had been burglarized and several items were missing, including her gray digital camera.

¶ 7         Phil Worthy, general manager at the Pawn King pawnshop, testified that on June 16, 2012, defendant pawned the camera for $35.  Approximately 40 minutes later, defendant returned to Pawn King and pawned the Xbox, controllers, and two games for $90.  Worthy testified he would typically sell the camera for $59.99 and the game system for $180 to $190.  Worthy stated no one had the authority to enter his pawnshop for the purpose of committing a theft.

¶ 8         Decatur police detective Troy Kretsinger testified he investigated a string of residential burglaries and learned defendant had pawned several items at Pawn King.  Kretsinger interviewed defendant, who admitted buying merchandise "on the street" but denied going into a home and stealing items.  Defendant agreed it was "reasonable for him to know or at least strongly suspect the property he was purchasing was stolen."  Defendant also admitted pawning

the Xbox and the camera. He never admitted knowing the items were stolen.

¶ 9    Defendant exercised his constitutional right not to testify. Following closing arguments, the jury found defendant guilty. In February 2013, defendant filed a posttrial motion for a new trial, claiming the State's evidence was insufficient to prove him guilty beyond a reasonable doubt. In March 2013, the trial court denied the posttrial motion and sentenced defendant to six years in prison. Defendant filed a motion to reconsider his sentence, which the court denied. This appeal followed.

¶ 10                              II. ANALYSIS

¶ 11    Defendant argues his burglary convictions should be reversed because the State failed to prove he entered Pawn King with the intent to commit therein a theft of stolen property. We agree.

¶ 12    " 'When reviewing a challenge to the sufficiency of the evidence in a criminal case, the relevant inquiry is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Ngo*, 388 Ill. App. 3d 1048, 1052, 904 N.E.2d 98, 102 (2008) (quoting *People v. Singleton*, 367 Ill. App. 3d 182, 187, 854 N.E.2d 326, 331 (2006)).

¶ 13    A person commits burglary when he, without authority, knowingly enters a building "with intent to commit therein a felony or theft." 720 ILCS 5/19-1(a) (West 2010). Section 16-1(a) of the Criminal Code of 1961 (720 ILCS 5/16-1(a) (West 2010)) sets forth the offense of theft as follows:

"A person commits theft when he knowingly:

(1) Obtains or exerts unauthorized control

over property of the owner; or

(2) Obtains by deception control over property of the owner; or

(3) Obtains by threat control over property of the owner; or

(4) Obtains control over stolen property knowing the property to have been stolen or under such circumstances as would reasonably induce him to believe that the property was stolen; or

(5) Obtains or exerts control over property in the custody of any law enforcement agency which any law enforcement officer or any individual acting in behalf of a law enforcement agency explicitly represents to the person as being stolen or represents to the person such circumstances as would reasonably induce the person to believe that the property was stolen, and

(A) Intends to deprive the owner permanently of the use or benefit of the property; or

(B) Knowingly uses, conceals or abandons the property in such manner as to deprive the owner

permanently of such use or benefit;
or

(C) Uses, conceals, or abandons the property knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit."

¶ 14    In the case *sub judice*, the State charged defendant with two counts of burglary, alleging he twice entered Pawn King with the intent to commit therein a theft. Generally, the " 'intent to permanently deprive the owner of his property may ordinarily be inferred when a person takes the property of another.' " *People v. Haissig*, 2012 IL App (2d) 110726, ¶ 31, 976 N.E.2d 1121 (quoting *People v. Veasey*, 251 Ill. App. 3d 589, 592, 622 N.E.2d 1246, 1248 (1993)); see also *People v. Adams*, 161 Ill. 2d 333, 343, 641 N.E.2d 514, 519 (1994) (stating "the intent to deprive an owner of his property may be inferred simply from the act of taking another's property"). Here, Officer Kretsinger testified that defendant agreed it was "reasonable for him to know or at least strongly suspect the property that he was purchasing was stolen." Thus, defendant committed the theft when he obtained control over the stolen property on the street.

¶ 15    The State's theory was that defendant committed theft by obtaining control over stolen property and then pawning the property at Pawn King. The State claims defendant entered Pawn King with the intent to pawn the property and thereby committed the permanent-deprivation element of theft. However, a person "obtains" control over property through an act occurring at a specific point in time by "bring[ing] about a transfer of interest or possession." 720 ILCS 5/15-7 (West 2010). Here, the permanent-deprivation element had already been

completed when defendant entered the pawnshop.

¶ 16    Our dissenting colleague asserts "defendant's intent when he obtained control over the stolen property was not an element of the alleged theft in this case because the State did not allege that defendant intended to complete a section 16-1(a)(4)(A) theft." *Infra* ¶ 37.  However, regardless of whether the State purports to rely on subsection (A), (B), or (C), the State must first prove one of the enumerated elements under subsection (a).  The enumerated subsections under (a) "describe the proscribed acts any one of which constitutes the crime of theft if performed with the mental states requisite for conviction; and *** subsections [(A), (B), and (C)] describe such mental states or conduct from which they will be presumed." *People v. Nunn*, 63 Ill. App. 2d 465, 474, 212 N.E.2d 342, 346 (1965).

¶ 17    Here, the State was required to prove defendant knowingly obtained control over stolen property knowing the property to have been stolen or under such circumstances as would reasonably induce defendant to believe the property was stolen.  Even under the dissent's theory, this element of the theft occurred prior to defendant's entry into Pawn King and incontrovertibly not inside or upon entry into the pawnshop.  Accordingly, defendant did not enter Pawn King with the intent to commit *therein* a theft, as required under the burglary statute.  In short, the pawnshop was not burglarized.  (We do not analyze whether the exchange of stolen property at the pawnshop for cash was a theft against the pawnshop because this was not the State's theory for the theft that supported the burglary charge.)  To hold otherwise under similar facts would lead to bizarre results.  For example, defendant could knowingly obtain stolen property on the street and stop by his neighbor's house with the intent to sell the property to that neighbor.  See *People v. Bailey*, 188 Ill. App. 3d 278, 284-85, 543 N.E.2d 1338, 1342 (1989) (stating a defendant's entry into "a building with intent to commit a theft cannot be said to be within the

authority granted those who might enter"). Under the State's theory, upon entry into his neighbor's house, defendant would have committed a residential burglary, a nonprobationable Class 1 felony (720 ILCS 5/19-3(b) (West 2010)).

¶ 18    The dissent also notes defendant's proposed instruction that he knowingly obtained control over stolen property and he intended to deprive the owner permanently of the use of the property was rejected by the trial court. See *infra* ¶ 39. However, it cannot reasonably be argued the evidence in this case could not have supported such a finding by the jury. Thus, rather than supporting the dissent's position, the trial court's refusal of defendant's instruction actually deprived defendant of a defense he was entitled to have the jury consider. See *People v. Hari*, 218 Ill. 2d 275, 296, 843 N.E.2d 349, 361 (2006) (stating "[v]ery slight evidence upon a given theory of a case will justify the giving of an instruction").

¶ 19    In *People v. Kimbro*, 182 Ill. App. 3d 572, 538 N.E.2d 826 (1989), the defendant was charged with the theft of a tractor stolen from the victim in the fall of 1975. The defendant's ex-wife recollected she heard the defendant park a tractor next to their bedroom in the fall of 1975. In the fall of 1986, the defendant moved the tractor to a friend's farm, and the tractor was finally discovered by an investigator in 1988. *Kimbro*, 182 Ill. App. 3d at 572-73, 538 N.E.2d at 827. The defendant was charged with theft, and the trial court dismissed the charge, finding the theft had occurred in 1975, the statute of limitations had expired, and the theft did not constitute a continuing offense. *Kimbro*, 182 Ill. App. 3d at 573, 538 N.E.2d at 827.

¶ 20    On appeal, the State relied upon *People v. Alexander*, 93 Ill. 2d 73, 442 N.E.2d 887 (1982), arguing the defendant's unauthorized possession of the tractor in 1988 constituted a separate theft offense not barred by the statute of limitations. *Kimbro*, 182 Ill. App. 3d at 573, 538 N.E.2d at 827. The appellate court disagreed and found, under the State's theory, the statute

- 7 -

of limitations for theft would never run. *Kimbro*, 182 Ill. App. 3d at 573-74, 538 N.E.2d at 828. The court distinguished *Alexander* on the basis *Alexander* did not implicate the statute of limitations and because the particular time the theft occurred was not an essential element in that case. *Kimbro*, 182 Ill. App. 3d at 573-74, 538 N.E.2d at 828. Here, as in *Alexander*, the statute of limitations is not an issue. However, the *time* the theft offense occurred is critical to the State's case. Thus, like the court in *Kimbro*, we do not find *Alexander* controlling.

¶ 21     The appellate court further rejected the State's second argument that the defendant's actions to conceal the tractor in 1986 commenced a new statutory period. The court concluded the theft occurred only once, in 1975. *Kimbro*, 182 Ill. App. 3d at 574, 538 N.E.2d at 828. Accordingly, the subsequent concealment or *use* of the tractor neither completed the initial theft nor formed the basis for a new theft charge. Similarly, here, defendant's pawning of the stolen property neither completed the initial theft nor formed the basis for charging a new theft of that same stolen property.

¶ 22     We note the dissent neither disputes *Kimbro* nor even acknowledges it but, instead, states our opinion today "will have the unintended effect of insulating fences from their criminal conduct" if the fence does not attempt to sell the property until the statute of limitations has expired. *Infra* ¶ 42. However, as previously stated, we have not opined the exchange of stolen property for cash is not a theft, nor that it can be done with "impunity," as suggested by the dissent. *Infra* ¶ 42. Moreover, even if we questioned *Kimbro*'s rejection of the State's second argument regarding the 1986 concealment of the tractor, it would not change the outcome of our disposition here. The State did not assert defendant was merely exerting unauthorized control over the property before selling it at the pawnshop, which arguably could have been the first point in time where defendant's action of exerting unauthorized control of the property coincided

with his criminal mental state. Instead, the State proved defendant knowingly obtained stolen property prior to his entry into Pawn King, from which the jury, if given the opportunity, could have inferred and found defendant's intent to permanently deprive the owners of the use and benefit of their property.

¶ 23 In conclusion, by obtaining control over stolen property on the street, defendant acted with the intent to permanently deprive the owners of the use and benefit of their property. Thus, defendant had already committed the theft when he entered Pawn King. As he could not have entered Pawn King with the intent to commit therein a theft, since it already occurred, he could not be found guilty of burglary. Accordingly, defendant's convictions for burglary must be vacated.

¶ 24 III. CONCLUSION

¶ 25 For the reasons stated, we vacate defendant's burglary convictions.

¶ 26 Judgment vacated.

¶ 27        JUSTICE STEIGMANN, dissenting.

¶ 28        The majority reverses defendant's burglary convictions because it concludes that defendant could not have entered Pawn King with the intent to commit therein a theft, "since it already occurred." *Supra* ¶ 23. However, in my judgment, the majority has misapplied the theft statute. Accordingly, I respectfully dissent.

¶ 29        Throughout its opinion, the majority appears to be viewing this case as if it involved the charge of theft under section 16-1(a)(4)(A) of the Criminal Code of 1961 (720 ILCS 5/16-1(a)(4)(A) (West 2010)), which requires proof of the defendant's intent *at the time* he obtains control over the stolen property. This case, however, involves section 16-1(a)(4)(B) of the Code (720 ILCS 5/16-1(a)(4)(B) (West 2010)), which requires proof that the defendant used, concealed, or abandoned the stolen property *after* he obtained control over it. Unlike a theft under section 16-1(a)(4)(A) of the Code, a theft under section 16-1(a)(4)(B) of the Code is not completed at the moment the defendant obtains control over the stolen property. Thus, although the majority is correct when it writes that the section 16-1(a)(4) element of the crime of theft occurred prior to defendant's entry into Pawn King, it does not follow (contrary to the majority) that "defendant did not enter Pawn King with the intent to commit *therein* a theft, as required under the burglary statute." (Emphasis in original.) *Supra* ¶ 17. That is because the section 16-1(a)(4) element to which the majority refers is not enough *by itself* to constitute the crime of theft.

¶ 30        The theft statute provides, in pertinent part, as follows:

" (a) A person commits theft when he knowingly:

* * *

(4) Obtains control over stolen property knowing

- 10 -

the property to have been stolen or under such circumstances as would reasonably induce him to believe that the property was stolen; [and]

    ***

    (A) Intends to deprive the owner permanently of the use or benefit of the property; or

    (B) Knowingly uses, conceals or abandons the property in such manner as to deprive the owner permanently of such use or benefit; or

    (C) Uses, conceals, or abandons the property knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit."

720 ILCS 5/16-1(a) (West 2010).

¶ 31          In this case, the jury was instructed on the elements of theft under section 16-1(a)(4)(B) of the Code. The subsection (A) element of the theft statute is fundamentally different from the subsection (B) or (C) element because the subsection (A) element is a *mental state* that is present at the moment the defendant obtains control over the stolen property. The subsection (B) and (C) elements, on the other hand, are *actions* that the defendant completes *after* he obtains control over the stolen property.

¶ 32          Under the State's theory in this case, defendant entered Pawn King intending to

*use* the property (*i.e.*, pawn it) in such manner as to deprive the owner permanently thereof. This was a section 16-1(a)(4)(B) theft. The jury instructions were expressly written to fit this theory. The majority writes about this case as if it involved a section 16-1(a)(4)(A) theft, but it does not.

¶ 33　　　　Because the charge in this case was for burglary, the elements of theft were set out in the jury instructions. They were not set forth in the charges against defendant. The jury was instructed in accordance with the section 16-1(a)(4)(B) elements of theft, as follows:

>　　　　"A person commits the offense of theft when he knowingly obtains control over stolen property under such circumstances as would reasonably induce him to believe the property was stolen, and he knowingly *uses* the property in such manner as to deprive the owner permanently of its use or benefit." (Emphasis added.) Illinois Pattern Jury Instructions, Criminal, No. 13.23 (4th ed. Supp. 2009) (hereinafter, IPI Criminal 4th No. 13.23 (Supp. 2009)).

¶ 34　　　　Defendant's "proposition" instructions for theft—which the trial court gave as lesser-included-offense instructions—also tracked the language of section 16-1(a)(4)(B), as follows:

>　　　　"To sustain the charge of theft, the State must prove the following propositions:
>
>　　　　　　　　* * *
>
>　　　　Fourth Proposition: That the Defendant *used* the FUJITSU T210 Camera in such manner as to deprive Ashley Benton permanently of the use or benefit." (Emphasis added.)

See Illinois Pattern Jury Instructions, Criminal No. 13.24 (4th ed. Supp. 2009). (The court gave the same instruction as to Lyndsi Constant's Xbox system.)

¶ 35 I note that defendant's brief contains an incorrect definition of theft by obtaining control over stolen property. (See page 17 of defendant's brief.) Defendant defines that offense by referring *only* to section 16-1(a)(4) of the Code, omitting entirely any reference to subsections (A), (B), and (C), one of which must be included with section 16-1(a)(4) in order to define that offense. Perhaps this erroneous definition (and defendant's argument based thereon) contributed to what I believe is the majority's erroneous application of the theft statute.

¶ 36 To hold that a violation of section 16-1(a)(4)(B) of the Code is complete at the transfer of possession would be to ignore the subsection (B) element of using, concealing, or abandoning the property. Certainly, that element cannot be satisfied *before* or *at the exact moment* the defendant obtains control over the stolen property.

¶ 37 The majority concludes that "by obtaining control over stolen property on the street, defendant acted *with the intent* to permanently deprive the owners of the use and benefit of their property. Thus, defendant had already committed the theft when he entered Pawn King." (Emphasis added.) *Supra* ¶ 23. However, defendant's intent when he obtained control over the stolen property was not an element of the alleged theft in this case because the State did not allege that defendant intended to commit a section 16-1(a)(4)(A) theft. Theft is a single offense that may be performed in different ways, and the different methods of performance may require proof of different elements. *People v. Graves*, 207 Ill. 2d 478, 484-85, 800 N.E.2d 790, 793 (2003). The majority's conclusion that the theft in this case was completed when defendant obtained control over the property on the street assumes that section 16-1(a)(4)(A) of the Code applied. However, the jury in this case was instructed under section 16-1(a)(4)(B) of the Code,

which required proof not of defendant's "intent," but of what defendant did with the property after he obtained control over it. Simply put, section 16-1(a)(4)(B) of the Code requires proof of a different element than section 16-1(a)(4)(A) of the Code.

¶ 38 In this case, the jury instructions and the State's opening and closing arguments clearly set forth the theory that defendant went into Pawn King intending to satisfy the subsection (B) element of theft under section 16-1(a)(4)(B) of the Code by *using* the stolen property in such a manner as to deprive the owner permanently of such use or benefit. The State submitted—and the trial court gave—pattern jury instructions that were consistent with this theory. The State's theory clearly fell within the definition of theft under section 16-1(a)(4)(B) of the Code. A rational trier of fact could conclude that by pawning the stolen property in exchange for cash, defendant used the property in such a manner as to deprive the owners permanently of such use or benefit (or, at least, that was defendant's intent when he entered Pawn King).

¶ 39 Notably, defendant proposed the following instruction on the definition of theft, which tracked the language of section 16-1(a)(4)(A) of the Code:

> "A person commits the offense of theft when he knowingly obtains
> control over stolen property under such circumstances as would
> reasonably induce him to believe the property was stolen, and he
> *intends* to deprive the owner permanently of the use or benefit of
> the property." (Emphasis added.)

See IPI Criminal 4th No. 13.23 (Supp. 2009). The State objected to this instruction because it did not include the "use" element of section 16-1(a)(4)(B) of the Code. The State argued that "the [']use['] would, obviously, be the pawning of the item and getting money for that." The trial

- 14 -

court sustained the State's objection, stating, "I think in terms of the facts of this particular case, [the State's] instruction would be more appropriate."

¶ 40       In its closing argument, the State discussed how defendant completed the "use" element of section 16-1(a)(4)(B) of the Code inside Pawn King:

> "He has entered the building with the intent to commit the theft. He's walked in, he's got the items. He knows or reasonably should know that it's stolen. He does not have the right to do anything with it. *** That day he intended to sell it and he did. He got cash for a loan and he never came back to pay off the loan. *** He pocketed that ill gotten money intending that those people, Ashley and Lyndsi, would never get their property back. That's what's going to happen. He's taken it and sold it and that business is going to take it and they're going to sell it and if all goes right for the defendant, Ashley and Lyndsi will never see their property again."

¶ 41       The jury instructions on theft in this case required the jury to find that defendant not only obtained control over the stolen property *but also* "used" the property in such a manner as to deprive the owners permanently of such use or benefit. That element was satisfied when defendant pawned the property. Because defendant went into Pawn King intending to pawn the property—*i.e.*, to "use" the property under section 16-1(a)(4)(B) of the Code—defendant committed burglary.

¶ 42       The majority opinion will have the unintended effect of insulating fences from their criminal conduct. A fence who receives valuable stolen property (which is the definition of

what fences do) and keeps the property for three years (the theft statute of limitations) before trying to sell it may now do so with impunity. The public will be surprised by this result, and I'm confident it is one the legislature never intended. Nor is it a result required by the theft statute the legislature wrote.

¶ 43 Because defendant clearly entered Pawn King with the intent to commit theft (as defined in the jury instructions in accordance with section 16-1(a)(4)(B) of the Code), this court should affirm his burglary convictions.