2021 IL App (2d) 200669-U
No. 2-20-0669
Order filed December 14, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CM-228 |
| JONATHAN J. CHATMAN, | ) ) ) | Honorable Stephen L. Krentz, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Bridges and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant was properly convicted of theft where he removed his ex-girlfriend's key fob and keys from her car ignition after she had pulled over during an argument.  Defendant's intent to permanently deprive the victim of the use of the fob was shown in his separating the fob from the key chain before throwing them on the terrain beside the roadway.  Defendant's intent at the time he discarded them was not negated by his cooperating in a search for the fob later that day and the next day when the fob was finally found.

¶ 2    Defendant, Jonathan J. Chatman, appeals his conviction of theft (720 ILCS 5/16-1(a)(1)

(West 2018)).  He contends that the State failed to prove him guilty beyond a reasonable doubt.

Specifically, he argues that the State did not establish that he intended to permanently deprive his

ex-girlfriend, Kayla Williams, of the key fob to her vehicle when he threw the fob from the roadway where Williams was parked but later searched for and recovered the fob. We affirm.

¶ 3                                I. BACKGROUND

¶ 4     On June 2, 2020, defendant was charged with two counts of theft. Count I alleged that, on or about June 14, 2019, defendant knowingly exerted unauthorized control over a cell phone belonging to Kayla Williams, with the intent to permanently deprive her of its use. Count II alleged that, on or about the same date, defendant knowingly exerted unauthorized control over a car key fob belonging to Kayla Williams, with the intent to permanently deprive her of its use.

¶ 5     On September 22, 2020, the court held a bench trial. Williams testified that she and defendant were the parents of a three-year-old child. They had previously been in a dating relationship. On the morning of June 14, 2019, Williams was with defendant at a Walmart in Plano. She was purchasing items for a planned vacation with her children over Father's Day weekend. Williams and defendant argued because he was upset that Williams was taking their child away on Father's Day. He had recently given Williams $150 and said that he wanted it back. Defendant and Williams left the Walmart for Geneva where Williams worked. Williams was driving her car, and defendant was in the front passenger's seat. They continued to argue, and defendant took Williams's cell phone from her lap and threatened to throw it out the window if he did not get his money back. Williams said that she "didn't have [the money] so he could throw [the cell phone] out the window." Defendant then threw the cell phone out the window.

¶ 6     Immediately after defendant threw the phone, Williams pushed the roadside assistance button in her car, stopped her car on the shoulder of the road, and spoke to the assistance company. Defendant then removed the key fob from the ignition, grabbed the key chain to which the key fob and other keys were attached, and got out of the car. Williams described the key fob as the

combination of a car key and a fob equipped with buttons for remotely locking and unlocking the car. Williams did not see what defendant did with the key chain after he left the car. Shortly afterward, defendant returned to the car, got his wallet, and walked down the road. However, defendant did not leave the area.

¶ 7 Williams testified that several police officers arrived at the scene in response to the roadside assistance call. The officers spoke to both Williams and defendant and searched for Williams's cell phone and key chain. After calling Williams's cell phone, the officers found it, still in working condition, in a ditch full of water. Nearby, they found the phone case and a "pop socket," which had been attached to the cell phone. They found the key chain with Williams's house and mailbox keys attached but could not find the key fob. The State introduced State exhibit No. 5, which Williams identified as a photograph of her key chain. The chain consisted of several interconnected metal split rings on which keys were hung. The keys would normally be removed by unthreading them from the metal rings.

¶ 8 Williams testified that, with the key fob still missing, the officers offered to arrange a tow for her car. She declined because the tow was too expensive. Instead, she contacted a dealership, which brought her a replacement key fob while the police waited. The police arrested defendant. After his release the next day, he went with Williams to the location of the incident to search for her key fob. They found it in the same general area as the phone and the key ring. The key fob was still in working condition.

¶ 9 Officer Alejandro Lopez testified that he was the first officer to arrive at the scene. Lopez's partner, Officer Gordon Flanagan, arrived shortly afterward. Deputy John Collins also arrived at the scene. Lopez spoke to defendant, who had walked about 60 yards from Williams's car. Defendant admitted that he and Williams had an argument and that he threw Williams' cell phone

out the window. Defendant also admitted that, after Williams stopped the car, he took the car keys and threw those out the window as well. Lopez also spoke to Williams. Lopez and the other officers searched "in some of the farmer's land and some of the houses in that area" for the items that defendant had thrown. Lopez called Williams' cell phone and located it about 25 feet from the car in a ditch that had standing water. The edge of the ditch was about five feet from the roadway. He and the other officers also found the phone case, pop socket, and key chain several feet from the roadway. Lopez credited Flanagan with finding the key chain. Lopez estimated that it took the officers 45 minutes to recover these items. The key fob was not found.

¶ 10   Flanagan testified that, upon arriving at the scene, he participated in the search for the missing objects with Lopez, Collins, and Sergeants Smith and Moran. Chatman assisted the officers in the search. Flanagan testified that Lopez was the one who located the key chain.

¶ 11    Defendant moved for a directed finding. Defense counsel argued that defendant was not guilty of theft because he had no intent to permanently deprive Williams of her cell phone and key fob. Counsel described defendant's actions as "a temper tantrum." Counsel noted that defendant assisted the police in the search for the items and that all were recovered that day except for the key fob. Defendant then returned to the scene with Williams the next day and found the key fob. The State responded that defendant's original intent was to deprive Williams of the use of the objects and that his subsequent actions and change of heart did not negate that original intent.

¶ 12   The court granted defendant's motion for a directed finding as to count I (theft of the cell phone). The court reasoned that Williams gave consent for defendant to throw the phone out the window when she dared him to do so. The court denied the motion as to count II (theft of the key fob).

¶ 13    Defendant presented no evidence, and the court found defendant guilty on count II.  The court acknowledged that defendant's act was done rashly and that he subsequently calmed down and regretted it.  However, the court also noted that the key fob was separated from the key chain, indicating an intent to permanently deprive Williams of its use.  The court explained:

"I find to be the critical fact that he separated the fob from the key chain and that he did so after she called [roadside assistance], after the car had been stopped, after he knew the police were on their way.  And the fact that he later changed his mind and went back and assisted I think isn't sufficient to justify his act at the time in separating the fob from the key chain, and circumstantially I think it's been proven by throwing it or whatever he did, separating it from the fob and the chain."

The court sentenced defendant to six months' conditional discharge.  The court denied defendant's motion to reconsider, and he appeals.

¶ 14                                II. ANALYSIS

¶ 15    Defendant contends that the State failed to prove him guilty beyond a reasonable doubt because it failed to establish that he intended to permanently deprive Williams of the key fob to her vehicle.  He particularly notes that he assisted officers in looking for the key fob and that he helped Williams recover it the next day.

¶ 16    A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt.  *People v. Collins*, 106 Ill. 2d 237, 261 (1985).  On a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.)  *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319

(1979)). This standard applies regardless of whether the evidence is direct or circumstantial, and circumstantial evidence meeting this standard is sufficient to sustain a criminal conviction. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 17 The trier of fact has the responsibility to assess the credibility of the witnesses, weigh their testimony, and draw reasonable inferences from the evidence. *People v. Heard*, 187 Ill. 2d 36, 84 (1999). The testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant. *People v. Morehead*, 45 Ill. 2d 326, 329-30 (1970). A reviewing court will not reverse a conviction simply because the evidence is contradictory. *People v. Berland*, 74 Ill. 2d 286, 306 (1978). We will not substitute our judgment for that of the trier of fact. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000); *People v. Kotlarz*, 193 Ill. 2d 272, 298 (2000).

¶ 18 To prove defendant guilty of theft as charged, the State had to establish beyond a reasonable doubt that defendant knowingly exerted unauthorized control over the property of the owner and intended to deprive the owner permanently of the use or benefit of the property. 720 ILCS 5/16-1(a)(1)(A) (West 2018). Defendant does not dispute that he exerted unauthorized control over Williams's key fob. He does dispute that the State proved that he intended to permanently deprive Williams of the use of the key fob.

¶ 19 "Permanently deprive" means to:

"(a) Defeat all recovery of the property by the owner; or

(b) Deprive the owner permanently of the beneficial use of the property; or

(c) Retain the property with the intent to restore it to the owner only if the owner purchases or leases it back, or pays a reward or other compensation for its return; or

(d) Sell, give, pledge, or otherwise transfer any interest in the property or subject it to the claim of a person other than the owner." 720 ILCS 5/15-3 (West 2018).

¶ 20    "The knowledge and intent necessary for a theft charge need not be proven by direct evidence and may, instead, be proven indirectly by inference or by deduction made by the trier of fact based upon the facts and circumstances of the case." *People v. Cameron*, 2012 IL App (3d) 110020, ¶ 32.  "Evidence of intent to permanently deprive the owner of property is usually circumstantial, including inferences drawn from the facts and circumstances as well as " 'the act of theft itself.' " *People v. Moore*, 2021 IL App (1st) 172811, ¶ 205 (quoting *People v. Kotero*, 2012 IL App (1st) 100951, ¶ 31).  Thus, the intent to permanently deprive "may ordinarily be inferred when a person takes the property of another," particularly "when the owner of the property is a stranger to the accused." *People v. Veasey*, 251 Ill. App. 3d 589, 592 (1993).  Concealment of property and fraudulent or deceptive acts are also circumstances supporting an inference of an intent to permanently deprive. *Id.*  "Intent may also be inferred from the lack of evidence of intent to return the property or to leave it in a place where the owner could recover it." *Kotero*, 2012 IL App (1st) 100951, ¶ 31.

¶ 21    There was sufficient circumstantial evidence that, when defendant threw the key fob, he intended to permanently deprive Williams of the use of the fob.  The trial court reasonably concluded that defendant, after grabbing the key chain and exiting the car, removed the key fob from the key chain and threw the fob.  Defendant not only separated the key fob from the larger key chain, making the fob harder to locate, but he threw all the items onto terrain—apparently a mixture of farmland and houses—where they were difficult to spot.  It took multiple officers 45 minutes to locate the cell phone, case, pop socket, and key chain.  The cell phone was underwater in a ditch.  The key fob was not found until the next day.

¶ 22    Defendant argues that the key fob may have accidentally become separated from the key chain when he threw it.  This was unlikely, however, given the design of the key chain.  Defendant

also argues that he could not have intended to permanently deprive Williams of the key fob, because he assisted the police in searching for the missing items and, the next day, found the key fob while searching with Williams. However, that defendant regretted his actions and had a change of heart did not negate his intent when he threw the key fob.

¶ 23    Defendant also cites two cases in which the appellate court found that the State did not prove that the defendant intended to permanently deprive the owner of the use or benefit of the owner's property. Both are factually distinguishable. In *People v. Bivens*, 156 Ill. App. 3d 222, 230 (1987), the defendant was charged with possession of a stolen motor vehicle, which required the State "to prove not only that defendant's possession of the vehicle was unauthorized, but also that he intended or knowingly exerted control of the property in such a manner as to permanently deprive the owner of its use and benefit." The defendant and his companion, both jail escapees dressed as peace officers, approached a group standing near a vehicle. The group included the wife of the vehicle's owner and the wife's brother, Rubio. The defendant and the other man commandeered the vehicle, claiming they needed it for police business. To make sure the vehicle was not damaged, Rubio remained inside while the defendant and the other man drove off. As they drove, the men informed Rubio that they had just escaped from jail. A short time later, the men exited the vehicle and left the scene, and Rubio drove away. *Id.* at 230-31. Without elaboration, the appellate court held that the evidence was sufficient to prove that the defendant intended to permanently deprive the owner of the use or benefit of the vehicle. *Id.* at 231.

¶ 24    The respondent in *In re T.A.B.*, 181 Ill. App. 3d 581, 583 (1989), was also charged with possession of a stolen motor vehicle. The court encapsulated the evidence: "respondent took his foster father's car without permission and drove it around the area in which he resided for awhile." *Id.* at 586. The excursion ended when the respondent struck a telephone pole. The appellate court

held that "[s]uch joyriding escapades are not considered thefts." *Id.* The court found "simply no evidence that respondent intended to permanently deprive his foster father of the use or benefit of the car." *Id.*

¶ 25 *Bivens* and *T.A.B.* are materially different from this case. In *Bivens*, the defendant and his companion allowed Rubio (the vehicle owner's brother-in-law) to remain in the car as they drove, and they relinquished the car to him after a short period. In *T.A.B.*, the respondent took the car from a family member and drove around the area where they resided—an action that was consistent with an intent to use the car temporarily. In contrast, defendant took the key fob from Williams and threw it onto terrain where it could easily become lost. Moreover, unlike in *Bivens*, defendant did not shortly afterward return the property. Rather, he commenced his search only after the police arrived, and he did not locate the fob until the next day.

¶ 26 Finally, defendant relies on *Veasey*, arguing that, because he and Williams were not strangers, the trial court should not have inferred from his taking of the key fob that he intended to permanently deprive Williams of the fob. However, *Veasey* does not require that the defendant and the victim be strangers for a fact finder to infer, from the taking of property, an intent to permanently deprive the owner of the property. Instead, *Veasey* merely mentions the taking of property from a stranger as a type of situation that supports the inference, based on common experience. *Veasey*, 251 Ill. App. 3d at 592 ("It would be contrary to experience and reason to conclude a stranger would *** take money from another stranger without fully intending to permanently deprive the wronged party of the money." (Internal quotation marks and citation omitted)). Here, experience and reason likewise support the inference that, when defendant grabbed Williams's key fob and threw it, he did not intend to return it. Thus, the trial court reasonably concluded that defendant committed theft when he threw the key fob.

¶ 27                              III. CONCLUSION

¶ 28    For the reasons stated, defendant was proved guilty beyond a reasonable doubt. Accordingly, we affirm the judgment of the circuit court of Kendall County.

¶ 29    Affirmed.