**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 200503-U

Order filed February 10, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0503 Circuit No. 17-CF-528 |
| | ) | |
| JEAN H. SMITH, | ) ) | Honorable Clark E. Erickson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ALBRECHT delivered the judgment of the court.
Presiding Justice Holdridge and Justice Peterson concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The State proved beyond a reasonable doubt that defendant committed a theft.

¶ 2     Defendant, Jean H. Smith, appeals her conviction for theft. Defendant argues that the

State failed to prove her guilty beyond a reasonable doubt. We affirm.

¶ 3                                          I. BACKGROUND

¶ 4     A grand jury charged defendant with theft, a Class 3 felony (720 ILCS 5/16-1(a)(1)(A),

(b)(4) (West 2016)). The bill of indictment alleged that defendant "knowingly exerted

unauthorized control over property of Rose Dotson, to wit: a purse and its contents, having a total value in excess of $500.00, but not in excess of $10,000.00, intending to deprive *** Dotson permanently of the use of the property." The court appointed counsel and the matter proceeded to a bench trial.

¶ 5        Dotson testified that she went to the Walmart in Kankakee on May 24, 2017, at approximately 5:30 p.m. Dotson parked her vehicle in a handicap spot near the east side of the building. After exiting the store, Dotson unloaded her items from her shopping cart into her trunk. She left the cart in front of her car. At some point after leaving the parking lot, Dotson realized that her purse was not in her car. She remembered she left her purse in the front basket of the cart. Dotson returned to Walmart and found her purse was no longer in the cart.

¶ 6        Dotson's purse was grey, large, and had handles. She purchased the purse for approximately $80. Dotson left her wallet, insulin, checkbook, credit cards, driver's license, $400, and an iPhone 7 that she recently purchased for approximately $600 in the purse.

¶ 7        Police Sergeant Tim Kreissler testified that he went to Walmart on June 1, 2017, to view a security video relating to the theft of Dotson's purse. From the security video, Kreissler identified, as a vehicle of interest, a small, white truck with a blue plastic barrel in its truck bed. After Kreissler left Walmart, he noticed the same truck at a gas station. Kreissler identified the truck based on its missing rear bumper, a dent near the right rear tire, and its missing front right hubcap.

¶ 8        Kreissler stopped at the gas station and observed an elderly woman "buying a bunch of Lotto tickets." He waited for her to leave in the truck and then conducted a traffic stop. Kreissler identified the driver as defendant and identified her in court The court admitted into evidence photographs of a white truck missing a rear bumper as People's exhibit Nos. 4, 5, and 6.

2

Kreissler created a six-person photographic lineup that Officer Lacie Zingre administered to Josh Horton, the Walmart employee responsible for bringing in the shopping carts. Kreissler obtained an audio recorded statement from Horton.

¶ 9      Zingre testified that she administered the photographic lineup to Horton on June 6, 2017. Zingre first read the instruction page to Horton. Zingre then ensured that Horton understood the instructions. Horton initialed the instruction page of the lineup indicating that he understood the instructions. Zingre presented the lineup. Horton identified defendant. The court admitted into evidence the photographic lineup as People's exhibit No. 2.

¶ 10      The instruction page of People's exhibit No. 2 stated that "[t]he suspect may or may not be in this photo-line up and you are under no obligation to make an identification[,]" and "should not feel compelled to make an identification." On the questionnaire page of People's exhibit No. 2, Horton marked that he recognized defendant and noted that "the hairstyle was different."

¶ 11      Horton testified that he worked the midday shift on May 24, 2017. While collecting shopping carts, Horton found a grey purse in a shopping cart basket. Horton assumed it belonged to the person in the vehicle closest to the shopping cart, which was a white truck. He asked the passenger of the truck, an older, black woman, if the purse belonged to her. Horton testified that he thought the truck door was open. The woman's husband was loading groceries into the back of the truck. The woman nodded affirmatively, indicating that the purse belonged to her. Horton gave her the purse.

¶ 12      On cross-examination, Horton testified that he generally has a bad memory. On May 24, 2017, it was raining but light out. The woman never exited the truck. Horton stood on the right side of the cart and the woman was on the left side of the cart in the truck. Horton spoke to the

woman for approximately 10 seconds. Defense counsel asked "[a]nd basically, is this your purse? Yes, it is." And Horton answered "[y]eah, I apologize."

¶ 13    The State rested and defense counsel moved for a directed verdict. The court denied the motion.

¶ 14    Kreissler testified that he made no attempts to ping Dotson's cell phone. He did not obtain any search warrants to determine the location of the cell phone. He did not subpoena the credit card companies to determine whether Dotson's credit cards were used. He did not follow-up with Dotson's bank to determine whether any of Dotson's checks were cashed.

¶ 15    Ernest Jones testified that defendant is his wife. Jones testified that he could have been at Walmart on May 24, 2017. On that date, Jones transported several passengers to different locations. He met a young woman at the liquor store, and she asked him to drive her to Walmart. He described the woman as between the ages of 30 or 35. Jones did not remember an incident involving a purse.

¶ 16    Defendant testified that she had visited the Walmart in Kankakee numerous times but was at home on May 24, 2017. She had never met Horton. She did not accept a purse from Horton. She did not cash any checks belonging to Dotson or use Dotson's cell phone.

¶ 17    The court did not find defendant or Jones credible. The court stated that "[a]t the moment the defendant said, yes, that's mine, knowing it was not hers, she exerted unauthorized control over the property." Additionally, the court determined that defendant intended to permanently deprive Dotson of the purse since Dotson's credit cards and driver's license were in it. The court reasoned that "[t]here was no question that the owner could be easily identified, yet there was no effort to do that." The court found defendant guilty and sentenced her to 12 months' conditional

4

discharge. The court also ordered defendant to pay $1215 in restitution to Dotson. Defendant appeals.

¶ 18                                                    II. ANALYSIS

¶ 19      Defendant argues that the State failed to prove her guilty beyond a reasonable doubt of theft. Defendant makes the following arguments in support: (1) the evidence failed to show that defendant intended to commit theft, (2) Horton's identification was unreliable, and (3) the State failed to prove that the value in stolen property exceeded $500.

¶ 20      When a defendant makes a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Under this standard, a reviewing court will not substitute its judgment for that of the trier of fact on issues of the weight of evidence or the credibility of witnesses." *People v. Cooper*, 194 Ill. 2d 419, 431 (2000). "This same standard of review applies regardless of whether the evidence is direct or circumstantial [citation], and regardless of whether the defendant receives a bench or jury trial." *Id.*

¶ 21      "[I]n weighing evidence, the trier of fact is not required to disregard inferences which flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). "[I]t is not the function of this court to retry the defendant." *Collins*, 106 Ill. 2d at 261. Thus, "the reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). "A conviction will

be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Belknap*, 2014 IL 117094, ¶ 67.

¶ 22   Defendant first argues that the State failed to prove the "knowledge" and "intent" elements of theft. A person commits a theft when she knowingly obtains or exerts unauthorized control over property of the owner and intends to deprive the owner permanently of the use of the property. 720 ILCS 5/16-1(a)(1)(A) (West 2016). A person acts knowingly when she is consciously aware that her conduct is practically certain to cause the offense defined in the statute. *Id.* § 4-5. "A defendant's knowledge is generally established by circumstantial evidence rather than direct proof." *People v. Castillo*, 2018 IL App (1st) 153147, ¶ 26. "Circumstantial evidence is proof of facts or circumstances that give rise to reasonable inferences of other facts that tend to establish guilt or innocence of the defendant." *People v. Saxon*, 374 Ill. App. 3d 409, 417 (2007). "Knowledge, as an element of a criminal offense, is a question of fact for the trier of fact to decide." *People v. Monteleone*, 2018 IL App (2d) 170150, ¶ 26.

¶ 23   The record establishes that defendant knowingly exerted unauthorized control over the purse when she accepted the purse from Horton, knowing it did not belong to her. Horton's testimony clearly showed that he handed the purse he found in a cart in the parking lot to defendant. Defendant then indicated to Horton that the purse belonged to her. From this evidence, the court correctly reasoned that "[a]t the moment the defendant said, yes, that's mine, knowing it was not hers, she exerted unauthorized control over the property." Assuming, *arguendo*, that defendant initially thought the purse belonged to her, it is reasonable to infer that defendant would have quickly realized that the purse did not belong to her. The record further established that the purse belonged to Dotson, not defendant, as it contained Dotson's driver's license and credit cards. Kreissler testified that he identified a vehicle of interest by watching a

6

security video. It is reasonable to infer from Kreissler's testimony that no other vehicles or persons approached the cart containing the purse during the time frame when Dotson left it in the cart and when she returned for it. Thus, it is also reasonable to infer that the purse still contained Dotson's driver's license, credit cards, and other belongings when Horton found it. Accordingly, defendant knew the purse did not belong to her and there is no evidence that Dotson authorized her to possess it.

¶ 24     A person intends to accomplish a result when her conscious purpose is to accomplish that result. 720 ILCS 5/4-4 (West 2016). " '[G]enerally[,] ***[the] intent to permanently deprive the owner of his property may ordinarily be inferred when a person takes the property of another.' " *People v. Haissig*, 2012 IL App (2d) 110726, ¶ 31 (quoting *People v. Veasey*, 251 Ill. App. 3d 589, 592 (1993)). " 'This is particularly true when the owner of the property is a stranger to the accused.' " *Id.* (quoting *Veasey*, 251 Ill. App. 3d at 592). Additionally, "[t]he question of intent is one for the trier of fact." *In re Weigler*, 37 Ill. App. 3d 478, 482 (1976).

¶ 25     Defendant's failure to return the purse indicated that she intended to permanently deprive Dotson of the purse. Again, Dotson's driver's license and credit cards were in the purse. Thus, defendant could have easily identified the owner and attempted to return it to them or returned it to Walmart. The court recognized this when it noted that "[t]here was no question that the owner could be easily identified, yet there was no effort to do that."

¶ 26     Defendant next argues that Horton's identification of defendant was not reliable. "The State bears the burden of proving beyond a reasonable doubt the identity of the person who committed the charged offense." *People v. Lewis*, 165 Ill. 2d 305, 356 (1995). "[A] single witness' identification of the accused is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification." *Id.* Six factors are relevant

7

in evaluating the reliability of identification testimony: (1) the witness's opportunity to view the offender; (2) the witness's degree of attention; (3) the accuracy of the witness's prior descriptions; (4) the witness's level of certainty; (5) the length of time between the crime and confrontation; and (6) the witness's prior acquaintance with the suspect. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972); *People v. McTush*, 81 Ill. 2d 513, 521 (1980).

¶ 27　　　　Regarding the first factor, the witness's opportunity to view the offender, the question is "whether the witness was close enough to the accused for a sufficient period of time under conditions adequate for observation." *People v. Carlton*, 78 Ill. App. 3d 1098, 1105 (1979). Here, Horton testified that he was on one side of a shopping cart and defendant was on the other side sitting in the front passenger seat of the truck with the door open. Although it was raining, Horton testified that it was light out. While Horton only spoke with defendant for approximately 10 seconds, he had a close, unobstructed view of defendant. Thus, the first factor weighs in favor of the State.

¶ 28　　　　Regarding the second factor, the witness's degree of attention, reviewing courts generally focus on whether the witness provided detailed and descriptive testimony. See *People v. Blankenship*, 2019 IL App (1st) 171494, ¶ 29; *In re J.J.*, 2016 IL App (1st) 160379, ¶ 30; *People v. Manion*, 67 Ill. 2d 564, 572 (1977). Here, Horton provided a detailed account of the theft and descriptions of defendant, the purse, the truck, and his proximity from defendant. Additionally, on the photographic lineup form, Horton noted that defendant's hair was different at the time of the theft. This indicates that Horton directed his attention toward defendant during the encounter. See *Cunningham*, 212 Ill. 2d at 280 (all reasonable inferences in favor of the State). The second factor favors the State.

¶ 29      As to the third factor, the accuracy of the witness's prior descriptions, the record does not contain Horton's prior descriptions of defendant. Regardless, "no general right exists to an inference that potential evidence would help a defendant based on the State's failure to present that evidence." *People v. Majka*, 365 Ill. App. 3d 362, 371 (2006). Accordingly, the third factor favors neither the State nor defendant.

¶ 30      Regarding the fourth factor, the witness's level of certainty, Horton did not testify regarding his level of certainty. Additionally, the State did not ask Horton to identify defendant in court. Still, the court admitted People's exhibit No. 2, the photographic lineup. Zingre testified that she read the instructions to Horton. The instructions stated that the suspect may not be in the lineup, and that the witness was under no obligation and should not feel compelled to make an identification. Horton accurately identified defendant. Accordingly, we can reasonably infer that Horton was certain regarding his identification of defendant. See *Cunningham*, 212 Ill. 2d at 280.

¶ 31      Defendant concedes that the fifth factor, the length of time between the crime and confrontation, favors the State. We agree. Here, the length of time between the crime and identification was only 13 days. *Cf. People v. Rodgers*, 53 Ill. 2d 207, 214 (1972) (identification made two years after the crime).

¶ 32      Regarding the sixth factor, the witness's prior acquaintance with the suspect, nothing in the record indicates that Horton previously knew defendant. Since the identification of a stranger is generally considered unreliable (*United States v. Wade*, 388 U.S. 218, 228 (1967)), this factor weighs in favor of defendant. Regardless, based on the totality of the circumstances, Horton's identification of defendant was reliable.

¶ 33      Finally, defendant argues that the State failed to prove that the value of the stolen property exceeded $500. "[T]heft of property exceeding $500 and not exceeding $10,000 in

9

value, is a Class 3 felony." 720 ILCS 5/16-1(b)(4) (West 2016). Additionally, "[w]hen a charge of theft of property exceeding a specified value is brought, the value of the property involved is an element of the offense to be resolved by the trier of fact as either exceeding or not exceeding the specified value." *Id.* § 16-1(c). "[T]he State carries the burden of proving each element of a charged offense beyond a reasonable doubt." *People v. Murray*, 2019 IL 123289, ¶ 28. Still, the State does not need to prove the exact value of the stolen property, it only needs to prove that value exceed $500 at the time of the theft. See *People v. Davis*, 132 Ill. App. 3d 199, 203 (1985). "[T]he owner of personal property [can] testify to its value, where [she] has some familiarity with the property." *People v. Newton*, 117 Ill. App. 2d 232, 235 (1969). "In the absence of contrary evidence, testimony as to the value of property alleged to be stolen is proper proof of value." *People v. DePaolo*, 317 Ill. App. 3d 301, 308 (2000).

¶ 34       Here, Dotson testified that she recently purchased an iPhone 7 for approximately $600 and that the iPhone was in her purse at the time of the theft. Additionally, Dotson testified that the purse contained $400 in cash. We previously established that it is reasonable to infer that the purse still contained Dotson's belongings, including the iPhone 7 and cash, when Horton found it. *Supra* ¶ 23. Accordingly, allowing all reasonable inferences from the record in favor of the State (*Cunningham*, 212 Ill. 2d at 280), we find that the State proved beyond a reasonable doubt that the value of the items in the purse plus the cost of the purse exceeded $500. Overall, the evidence was sufficient to prove defendant's guilt of theft beyond a reasonable doubt.

¶ 35                                    III. CONCLUSION

¶ 36       The judgment of the circuit court of Kankakee County is affirmed.

¶ 37       Affirmed.