# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Kotero*, 2012 IL App (1st) 100951

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEITH KOTERO, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-10-0951 |
| Filed | September 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant parking enforcement officer's convictions on five counts of theft arising from accepting money for removing "Denver boots" were affirmed, but his conviction on one count of official misconduct based on the same acts was vacated pursuant to the one-act, one-crime doctrine, since official misconduct was the less serious offense. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 07-CR-4407, 07-CR-4410 to 07-CR-4414; the Hon. Thomas M. Tucker, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Kieran M. Wiberg, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Anthony M. O'Brien, and Donald T. Lyman, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Presiding Justice Harris and Justice Quinn concurred in the judgment and opinion.

**OPINION**

¶ 1  Following a bench trial, defendant was convicted of five counts of theft (720 ILCS 5/16-1(a)(2) (West 2006)) and one count of official misconduct (720 ILCS 5/33-3(b) (West 2006)). On appeal, defendant argues that his theft convictions must be vacated because they resulted from the same act as his official misconduct conviction. Alternatively, he argues that his convictions were based on certain evidence for which no proper foundation had been established and that the State failed to prove him guilty of one count of theft beyond a reasonable doubt. For the following reasons, we vacate defendant's conviction for official misconduct and affirm his convictions for theft.

¶ 2                                    BACKGROUND

¶ 3  Defendant Keith Kotero worked as a parking enforcement officer for the Village of Oak Park (Village). Among other things, defendant was responsible for installing and removing "Denver boots," which temporarily immobilized cars after the owners received a certain number of parking violations, and maintaining the files in those cases. On five separate occasions in August and September of 2006, defendant allegedly told several people whose vehicles had been booted that if they paid him a certain amount of money in cash, then he would arrange to have the boot removed from their cars. The State alleged that although defendant removed the boots, he never gave the money to the Village. The State charged defendant with five counts of theft and one count of official misconduct.

¶ 4  During a bench trial, the State called Wayne Moran, director of the Village's adjudication department, to testify. He stated that typically, when a car owner discovered that his car had been booted, the owner would contact defendant. Defendant would then tell the owner that he could seek a hearing to determine whether the boot was properly placed or that he could pay the outstanding fines and fees from the unpaid parking tickets and have the boot

-2-

removed. In the latter case, defendant was to direct the car owner to the cashier's office to pay the fines by cash, check, or credit card. The cashier also recorded payments in a computer system, indicating the method of payment used.

¶ 5 Defendant had no authority to accept payments for parking fines and fees personally. Nor did he have the authority to negotiate partial-payment settlements for outstanding fines. In fact, Moran stated that the Village required full payment of all fines to have a boot removed. Moran also explained that by the time an owner was eligible for a boot, his outstanding parking tickets had been finally adjudicated. The only Village official that had the authority to determine whether a finally adjudicated ticket could be "nonsuited" was an administrative law judge.

¶ 6 Michael Duebner then testified as the former information technology director for the Village. He stated that his department developed a software program to manage the parking ticket process, including notification to offenders, booting status, and adjudication of the tickets. The software program had two components: the financial side and the adjudication side. The cashier's office employees who processed payments had access to the financial side. Employees like defendant, who worked with adjudications and the booting process, only had access to the adjudication side. He had a personal login and password for accessing the program. Defendant's access gave him the ability to view the details of tickets, to void tickets, and to produce lists of people eligible for a boot. Additionally, defendant had the "ability to nonsuit tickets" in the software program and he was required to "enter comments as to why those tickets were nonsuited." Whenever a ticket is nonsuited or voided, an offsetting transaction is generated on the financial side.

¶ 7 Duebner testified that he generated a report showing those transactions that were nonsuited by defendant between January and October of 2006 at the request of an Oak Park police department detective. Defense counsel objected to the introduction of the report at trial because he contended that no foundation had been laid. He also contended that the reports were hearsay that did not fall under the business records exception. The court overruled the objection.

¶ 8 Duebner testified that the report showed that a woman named Stephanie Skrine had 13 parking tickets and all of them were nonsuited under defendant's account on August 25, 2006. The report indicated that the tickets were nonsuited because of a "system error" that resulted from the vehicle having temporary license plates. However, Duebner testified that after further inspection, he discovered that the license plates were not temporary and the tickets were improperly nonsuited. The offsetting entries on the financial side of the program appeared as debit transactions, effectively reversing the fines as though the tickets had been wrongfully issued and indicating that no money was received by the Village as payment for those tickets.

¶ 9 Similarly, the program showed that Michael Mejia had seven tickets and each of them was voided under defendant's account on August 21, 2006, because of a system error involving temporary license plates. Nevertheless, the plates were not temporary. The program also showed that no money had been received as payment for Mejia's tickets and that the fines had been reversed. The program showed the same results for parking tickets issued to

Euphoria Knight and Jaunche Draine. Tickets issued to David Bouie had not been nonsuited. On cross-examination, Duebner admitted that although the transactions appeared under defendant's account, he never saw defendant perform those transactions nonsuiting the tickets.

¶ 10    Officer William Cotter testified that he began investigating defendant after receiving a complaint that the process of releasing a boot from the complainant's car "wasn't handled properly" by defendant. Cotter discovered that defendant had nonsuited tickets in more than 150 cases over the course of several years. When Cotter tried to pull the files in those cases, he found that they were missing entirely. Cotter found 11 of the more recent case files in a garbage can underneath defendant's desk and 4 more case files on top of defendant's desk. None of those case files contained the proper receipts and release forms required before a boot may be removed.

¶ 11    Skrine testified that when she discovered that her car had been booted, she contacted defendant. When she met with him, he told her that she owed $1,000 in outstanding parking tickets. Defendant told her that she could pay him $400 to settle the tickets, but she had to pay him in cash. He told her that she could not pay by check "because a person could stop payment on a check" and she could not pay by credit card "because a person could dispute the charges." Skrine testified that she was "kind of freaked out because [defendant] wanted $400 cash," but she called her brother to borrow the money anyway. She brought the money to defendant later that day and he gave her a receipt. However, a week later, she got a letter from the Village stating that her "car was still on the boot list." Skrine testified on cross-examination that defendant "assured [her] that [her] car was no longer on the boot list."

¶ 12    Mejia then testified that his car also was booted after accumulating many unpaid parking tickets. He called the Village and spoke to someone identifying himself as defendant. Defendant told him that if he could not pay the entire amount he owed for the tickets, they could "work something out," but Mejia had to pay in cash. Mejia stated that he owed approximately $600 for the unpaid parking tickets, but he paid defendant about $400 in cash to satisfy the debt. Defendant then gave him a receipt with the Village seal that "looked official." Mejia stated that when he got home from the police station about 20 minutes later, the boot had been removed from his car.

¶ 13    Knight testified that when she discovered that her car had been booted, she went to the Village and met with defendant. She stated that she had about $900 in unpaid parking tickets, but defendant agreed to accept $600 in cash to settle the debt. She testified that he gave her a receipt. By the time Knight returned home, the boot had been removed from her car.

¶ 14    Draine testified that he went to the Village after his car had been booted. Draine had about $2,200 in unpaid parking tickets. Defendant "set up a payment plan" for Draine and allowed him to pay his tickets over time. Draine paid defendant $800 in cash that day and the boot was removed. He made additional cash payments to defendant every two weeks. Defendant gave Draine a handwritten receipt on Village letterhead after each payment. In total, Draine paid just over $2,000 to defendant.

¶ 15    Bouie testified that he went to see defendant after his car had been booted. Defendant told Bouie that he owed over $500 in unpaid tickets. Bouie offered to pay the fines by credit

card, but defendant told him that he could not accept credit card payments. The next day, Bouie discovered that his car had been towed. Bouie returned to defendant's office a few days later with cash and paid slightly less than he owed in fines. Defendant helped Bouie get his car back from the towing company; at that time, the boot had been removed from Bouie's car. Almost two weeks later, a police detective called Bouie and told him that the Village's records did not reflect that his parking fines had been paid.

¶ 16    After closing arguments, the court found defendant guilty on five counts of theft and one count of official misconduct.

¶ 17                                             ANALYSIS

¶ 18    On appeal, defendant first argues that his theft convictions arose out of the same act as the official misconduct conviction in violation of the one-act, one-crime doctrine. He asserts that such a violation usually results in vacatur of the conviction on the less serious charge. However, he contends that where the offenses carry the same penalty, as in this case, the conviction for the more general offense should be vacated. Therefore, his theft convictions should be vacated. Although the State agrees with defendant and concedes this issue, it is nevertheless an issue that requires an analysis that neither of the parties provides.

¶ 19    The one-act, one-crime doctrine prohibits multiple convictions based on "precisely the same physical act." *People v. Nunez*, 236 Ill. 2d 488, 494 (2010). However, if a defendant commits multiple acts, then multiple convictions may stand, provided that none of the offenses are lesser-included offenses. *Nunez*, 236 Ill. 2d at 494. Whether a defendant has been improperly convicted of multiple offenses arising out of the same act and whether a charge encompasses another as a lesser-included offense are questions of law that we review *de novo*. *Nunez*, 236 Ill. 2d at 493.

¶ 20    The first step in this analysis requires us to determine whether the defendant's conduct was a single physical act or multiple acts. *People v. Harvey*, 211 Ill. 2d 368, 389-90 (2004). In this context, an "act" is " 'any overt or outward manifestation which will support a different offense.' " (Emphasis omitted.) *Nunez*, 236 Ill. 2d at 494 (quoting *People v. King*, 66 Ill. 2d 551, 566 (1977)).

¶ 21    This court has previously examined whether theft and official misconduct arise out of the same act for purposes of the one-act, one crime doctrine. In *People v. Moshier*, 312 Ill. App. 3d 879 (2000), the defendant, a township supervisor, was charged with theft and official misconduct after stealing over $100,000 from his municipal employer. *Moshier*, 312 Ill. App. 3d at 881. After being convicted for both offenses, the defendant sought to vacate his conviction for official misconduct, arguing that it was "based on the same conduct underlying his theft conviction." *Moshier*, 312 Ill. App. 3d at 880. We agreed, noting that "both counts of the indictment [were] based on the same act of converting 'certain checks and money *** having a total value in excess of $100,000.' " *Moshier*, 312 Ill. App. 3d at 882 (quoting the language of the indictment, which was exactly the same for both charges). Significantly, we held that although "defendant's knowledge of wrongdoing as a public official" is an additional element of the official misconduct charge not contained in the theft charge, it is not an "additional act, [as] it constitutes neither a physical act [citation] nor an

overt or outward manifestation capable of supporting a different offense." *Moshier*, 312 Ill. App. 3d at 882; see also *Harvey*, 211 Ill. 2d at 390 (an additional element of an offense is not necessarily a separate "act"). Therefore, convictions for both offenses could not stand because they both were based solely on the same act of stealing $100,000 from the township. Accordingly, pursuant to the defendant's request for relief, the court vacated the conviction for official misconduct. *Moshier*, 312 Ill. App. 3d at 882.

¶ 22    As in *Moshier*, we look to the charging instruments to determine whether the theft offenses and the official misconduct offense were based on the same "act" in this case. Theft by deception under section 16-1 of the Criminal Code of 1961 (Code) occurs when a person " 'knowingly *** [o]btains by deception control over property of the owner' and '[i]ntends to deprive the owner permanently of the use or benefit of the property.' " *People v. Kotlarz*, 193 Ill. 2d 272, 299 (2000) (quoting 720 ILCS 5/16-1(a)(2)(A) (West 2006)). The State charged defendant with five counts of that offense, alleging that on five different occasions,[1] defendant:

> "Knowingly obtained by deception control over property of the Village of Oak Park, to wit: United States currency, and [defendant] intended to deprive the Village of Oak Park permanently of the use or benefit of the property, and the property had a value exceeding $300.00 but not exceeding $10,000.00 ***."

¶ 23    Official misconduct under section 33-3(b) of the Code occurs when a public employee, in the public employee's official capacity, knowingly performs an act he knows is forbidden by law. *People v. Williams*, 239 Ill. 2d 119, 127 (2010) (citing 720 ILCS 5/33-3(b) (West 2006)). When charging official misconduct, section 33-3(b) "requires that the charging instrument specify the law allegedly violated by the officer." (Internal quotation marks omitted.) *Williams*, 239 Ill. 2d at 127. At a minimum, an indictment charging official misconduct must " 'allege facts that would show defendant violated an identifiable statute, rule, regulation, or tenet of a professional code.' " *Williams*, 239 Ill. 2d at 128 (quoting *People v. Grever*, 222 Ill. 2d 321, 337 (2006)).

¶ 24    The State charged defendant with one count of official misconduct under section 33-3(b), with the indictment stating:

> "[B]etween July 21, 2006 and September 28, 2006, *** [defendant] committed the offense of official misconduct in that he, a Village of Oak Park parking enforcement officer, in his official capacity, knowingly performed an act which he knows is forbidden by law to perform, to wit: theft of money due to the Village of Oak Park from unpaid parking tickets, in violation of [section 33-3(b) (720 ILCS 5/33-3(b) (West 2006))] ***."

¶ 25    Although the charges at issue here are the same as those in *Moshier*, this case differs in that the "act" giving rise to all of the charges against defendant involves five thefts that are

---

[1]The indictment in case number 07 CR 4410 alleged that the theft occurred on August 18, 2006. In case number 07 CR 4411, the alleged theft occurred on August 21, 2006. In case number 07 CR 4412, the alleged theft occurred on August 25, 2006. In case number 07 CR 4413, the alleged theft took place between August 4 and September 15, 2006. In case number 07 CR 4414, the alleged theft occurred on September 28, 2006.

themselves indisputably different "acts" of theft that took place on different dates and involved different victims. That is, a single charge of official misconduct is allegedly based on the same "act" as the five theft charges solely by virtue of the dates asserted in the indictments. Moreover, unlike *Moshier*, the wording of the indictments is not identical, nor did the official misconduct charge specify the law allegedly violated by defendant. However, none of these differences persuade us to depart from the holding in *Moshier*.

¶ 26     The official misconduct and aggregated theft charges were based on the same physical act, which was stealing money over a two-month period that belonged to the Village. The State charged defendant with official misconduct based on "theft of money due to the Village of Oak Park from unpaid parking tickets" and the theft charges were based on several instances of defendant "obtain[ing] by deception" money belonging to the Village. Additionally, the dates of the official misconduct charge encompass the dates of the theft charges. The dates an alleged offense occurred are an essential part of a charging instrument (725 ILCS 5/111-3(a)(4) (West 2006)) and here, they define the act for which defendant was convicted. See *People v. Patrick*, 38 Ill. 2d 255, 259 (1967); *People v. Baugh*, 145 Ill. App. 3d 133, 138 (1986) (explaining that a single offense may validly be described in an indictment as a series of successive events pursuant to a single criminal intent and scheme). Accordingly, as in *Moshier*, we conclude that the official misconduct charge and the theft offenses were based on the same act in violation of the one-act, one-crime doctrine. *Moshier*, 312 Ill. App. 3d at 882.

¶ 27     To remedy such a violation, sentence should be imposed on the more serious offense and the conviction for the less serious offense should be vacated. *People v. Artis*, 232 Ill. 2d 156, 170 (2009). In determining which offense is more serious, we "compare[ ] the relative punishments prescribed by the legislature for each offense" because the General Assembly likely assigned the greater punishment to the offense it deemed more serious. *Artis*, 232 Ill. 2d at 170. At the time the offense was committed, official misconduct was classified as a Class 3 felony. 720 ILCS 5/33-3 (West 2006). Theft of government property valued at more than $300 and less than $10,000 was classified as a Class 2 felony. 720 ILCS 5/16-1(b)(4.1) (West 2006). Therefore, defendant's conviction on the official misconduct charge must be vacated. See *Moshier*, 312 Ill. App. 3d at 882.

¶ 28     Defendant next argues that his theft convictions were based on documents erroneously admitted into evidence and, therefore, he is entitled to a new trial. He argues that no witnesses provided the proper foundation for the computer-generated reports showing that he nonsuited the witnesses' tickets without having turned over the money he collected from them. The State concedes the error, but argues that the admission of the evidence was harmless.

¶ 29     An error is harmless where it appears beyond a reasonable doubt that it did not contribute to the defendant's conviction. *In re Rolandis G.*, 232 Ill. 2d 13, 43 (2008). We analyze harmless error in one of three ways: (1) we may focus on the error itself to determine whether it might have contributed to the conviction; (2) we may examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction; or (3) we may determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence. *People v. Becker*, 239 Ill. 2d 215, 240 (2010) (citing *Rolandis*

*G.*, 232 Ill. 2d at 43).

¶ 30 The State contends that the error in admitting the reports is harmless in light of the overwhelming evidence supporting defendant's conviction. Defendant contends that the error cannot be harmless because the records constituted the only evidence presented by the State on the element of defendant's intent to permanently deprive the Village of the funds he allegedly took from the witnesses. Specifically, defendant contends that the records were used to demonstrate that he "nonsuited parking tickets that had been issued to the witnesses in this case" and that he "had not given the money that he received for the parking violations" to the Village.

¶ 31 As stated above, to convict a defendant of theft by deception, the State must prove that the defendant "obtain[ed] by deception control over property of the owner" and "[i]ntend[ed] to deprive the owner permanently of the use or benefit of the property." 720 ILCS 6/16-1(a)(2)(A) (West 2006); *Kotlarz*, 193 Ill. 2d at 299. Evidence of intent to permanently deprive the owner of property may be inferred from the facts and circumstances surrounding the theft, including the act of the theft itself. *People v. Adams*, 161 Ill. 2d 333, 343-44 (1994); *People v. Veasey*, 251 Ill. App. 3d 589, 591 (1993); see also *People v. Perry*, 224 Ill. 2d 312, 334-35 (2007). Intent may also be inferred from the lack of evidence of intent to return the property or to leave it in a place where the owner could recover it. *Adams*, 161 Ill. 2d at 343-44. In particular, intent may be inferred from fraudulent or deceptive acts that facilitated the theft. *Veasey*, 251 Ill. App. 3d at 592.

¶ 32 Here, admitting the computer documents was harmless error in light of the overwhelming evidence of defendant's intent to permanently deprive the Village of the money he took from the witnesses. All of the witnesses testified that they gave defendant what they believed to be a partial payment of the fines they owed the Village in order for the boots to be removed from their cars. Defendant told all of them that they could only pay him in cash, which is untraceable, when in fact the Village also accepted direct payments by check and credit card. Nevertheless, as Moran testified, defendant lacked the authority to accept any payments of fines, regardless of payment method. Nor did defendant have the authority to waive the Village's requirement that full payment of fines must be made before a boot could be removed. Furthermore, defendant provided the witnesses with falsified receipts for their payments, which suggests that he never intended to turn the money over to the Village. See *Adams*, 161 Ill. 2d at 343-44. Defendant's use of fraud and deception in obtaining the money from the witnesses provides overwhelming circumstantial evidence that he intended to permanently deprive the Village of the money. See *Veasey*, 251 Ill. App. 3d at 592. Thus, the erroneous admission of the computer records was harmless beyond a reasonable doubt. See *Rolandis G.*, 232 Ill. 2d at 43.

¶ 33 Defendant also argues that because the State did not present any computer records showing that Bouie's tickets were nonsuited and his fines were reversed, as it did for the other witnesses, the State failed to prove him guilty beyond a reasonable doubt on the theft count involving Bouie. Defendant argues that absent those computer records, there was no proof that defendant intended to permanently deprive the Village of the money. However, as we have just discussed, defendant's intent may be inferred from the deceptive nature of the theft itself and the computer documents were not necessary to prove that element. See

*Veasey*, 251 Ill. App. 3d at 591. Bouie's testimony that he made partial payments to defendant in cash in order to have his vehicle released, viewed in the light most favorable to the State, would permit a rational trier of fact to have found the essential elements of the offense involving Bouie proven beyond a reasonable doubt. *People v. Clarke*, 391 Ill. App. 3d 596, 610 (2009). Accordingly, the conviction is affirmed.

¶ 34                                          CONCLUSION

¶ 35      For the foregoing reasons, we vacate defendant's conviction for official misconduct as a violation of the one-act, one-crime doctrine. We affirm defendant's convictions on five counts of theft.

¶ 36      Affirmed in part and vacated in part.